### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 06 B 14628 |
| | ) | Chapter 7 |
| ASHLEY MICHELLE GOSSETT, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

These matters come before the Court on the motion of Ashley M. Gossett (the "Debtor") for sanctions pursuant to 11 U.S.C. §§ 362(a)(3) and 362(k)(1) against General Motors Acceptance Corporation ("GMAC") and the Development Group, and on the motions of GMAC to annul the automatic stay pursuant to 11 U.S.C. § 362(d) and to dismiss the case under 11 U.S.C. §§109(h)(1) and 707(a). For the reasons set forth herein, the Court grants GMAC's motion to dismiss. Because the Court finds the Debtor ineligible for relief in this case, the Court grants the relief requested by GMAC by virtue of the dismissal of the case pursuant to 11 U.S.C. § 707(a) whereby the stay terminated as a matter of law under 11 U.S.C. § 362(c)(2)(B). The Court denies the Debtor's motion for sanctions and GMAC's motion to annul the stay.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

·2·

## II. **FACTS AND BACKGROUND**

Most of the facts are undisputed and the parties waived their opportunity for an evidentiary hearing. On November 11, 2005, the Debtor executed a retail installment contract for a 2006 Pontiac G6 vehicle. In executing the contract, the Debtor granted GMAC a purchase money security interest in the vehicle which GMAC financed.

The Debtor alleges that on October 30, 2006, Kimberly Haskell ("Haskell"), the Debtor's step-mother, contacted GMAC to discuss the arrearages owed on the vehicle and to inform GMAC that the Debtor may be preparing to file a bankruptcy petition. GMAC informed Haskell that it intended to repossess the vehicle if the Debtor did not become current on the remaining $21,707.09 balance owed under the vehicle agreement.

On November 8, 2006, an agent for GMAC contacted the Debtor in regard to her account with GMAC. The Debtor indicated that she was planning to file for bankruptcy. The agent for GMAC informed her that GMAC requires a bankruptcy case number to "put the account in bankruptcy status." As no petition had been filed, the Debtor did not provide GMAC with a bankruptcy case number at that time.

Subsequently, the Debtor filed a pro se petition for relief under Chapter 7 of the Bankruptcy Code on November 8, 2006. As established by the Certificate of Counseling filed with the petition, she also received the credit counseling required under 11 U.S.C. §109(h)(1) just minutes prior to filing her petition.

The Debtor alleges that she printed two copies of the "Notice of Bankruptcy Case Filing" from the bankruptcy court's website and kept both notices in the vehicle. One notice was allegedly placed on the dashboard and the other was taped to the steering wheel.

-3-

On November 15, 2006, the Development Group, at GMAC's direction, repossessed the vehicle at the Debtor's place of employment. Both GMAC and the Development Group claim that the notice of the bankruptcy filing was not on the dashboard or on the steering wheel of the vehicle.

Shortly after learning that the vehicle had been repossessed, Haskell contacted an agent of GMAC to inform it that the Debtor had filed a petition for bankruptcy and to provide GMAC with the case number. Haskell allegedly informed GMAC that it violated the automatic stay and requested that the vehicle be returned immediately.

GMAC alleges that on November 15, 2006, it attempted to contact the Debtor to arrange the return of the vehicle. On November 16, 2006, GMAC contacted Haskell to discuss the return of the vehicle. Haskell stated that all further discussions regarding the case should be directed to the Debtor's attorney. Shortly after the conversation with Haskell, GMAC left a voice-mail message with the Debtor's attorney regarding an attempt to return the vehicle.

Later on November 16, 2006, the Debtor filed the motion for sanctions against GMAC and the Development Group for violating the automatic stay. On November 20, 2006, GMAC filed the motion to annul the automatic stay. Thereafter, on November 28, 2006, GMAC filed the motion to dismiss the case.

The Chapter 7 trustee appointed to the cased filed a no asset report on December 20, 2006. According to the papers filed on December 28, 2006 by the Development Group, the Debtor has purportedly released the Development Group from any claims in connection with the repossession, transport, and storage of the subject vehicle. Thus, the Court will consider only the remaining disputes between the Debtor and GMAC.

-4-

## III. DISCUSSION

**A.      GMAC's Motion to Dismiss**

**1. 11 U.S.C. § 109(h) Analysis**

Resolution of GMAC's motion to dismiss the case turns on the interpretation of 11 U.S.C. § 109(h)(1). It provides, in pertinent part, that "an individual may not be a debtor under this title unless such individual has, *during the 180-day period preceding the date of filing* of the petition by such individual, received from an approved nonprofit budget and credit counseling agency... an individual or group briefing ... that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis." 11 U.S.C. § 109(h)(1) (emphasis added). This new provision is sometimes referred to as the ticket into consumer bankruptcy for individual debtors, and is an eligibility requirement for relief with certain limited exceptions that are not applicable in the present case.

That some gap of time must exist between the end of the "180-day period" and the filing of the petition is obvious because the credit counseling must "preced[e] the date of filing of the petition." How much time must there be in the gap is not at all clear and, not surprisingly, has produced different results. Although this provision was enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, there is already a split of authority on the issue of exactly when the pre-petition 180-day period ends. The first line of cases, upon which the Debtor relies, holds that the statute should be interpreted to allow a debtor to obtain the counseling within the 180 days prior to the *moment* the debtor filed the petition. *See In re Spears*, 355 B.R. 116 (Bankr. E.D. Wis. 2006); *In re Hudson*, 352 B.R. 391 (Bankr. D. Md. 2006); *In re Warren*, 339 B.R. 475 (Bankr. E.D. Ark. 2006); *In re Barbaran*, No. 06-00457, 2007

-5-

WL 973945 (Bankr. D. D.C. Mar. 29, 2007); *In re Swanson*, No. 06-00968-TLM, 2006 WL 3782906 (Bankr. D. Idaho Dec. 21, 2006); *In re Moore*, Nos. 06-50573, 06-50794, 2006 WL 3692640 (Bankr. E.D. Tenn. Dec. 14, 2006). These cases allow the debtor to obtain credit counseling and file the bankruptcy petition on the same day as long as the debtor obtains the counseling certificate prior to filing the petition. *Spears*, 355 B.R. at 120; *Hudson*, 352 B.R. at 397; *Warren*, 339 B.R. at 480.

The second line of cases, upon which GMAC relies, holds that the statute requires the debtor to "complete the required counseling briefing on any day within 180 days prior to but not including the date upon which his or her bankruptcy petition is filed." *In re Cole*, 347 B.R. 70, 74 (Bankr. E.D. Tenn. 2006); *see also In re Murphy*, 342 B.R. 671 (Bankr. D.D.C. 2006); *In re Mills*, 341 B.R. 106 (Bankr. D.D.C. 2006).[1] Thus, pursuant to these cases, a debtor who obtains credit counseling on the same day that she files her petition is ineligible for bankruptcy relief. *Mills*, 341 B.R. at 109.

The Court has reviewed the cases on both sides of the issue and finds, as other courts have, that the two sides are diametrically opposed. *See Spears*, 355 B.R. at 117. Notably, however, the courts are able to find some support for either side of the argument. *See Moore*, 2006 WL 3962640, at *2-5 (providing a thorough review of the cases analyzing this issue). The issue arises because § 109(h)(1) does not pinpoint the precise moment in time when the 180-day pre-petition period terminates. The subject phrase is not one of the defined terms in 11 U.S.C. § 101, and the

---

[1] The Court notes that Judge Teel, the judge who authored the *Mills* decision, later wrote the *Barbaran* opinion wherein he stated that "[m]y contrary holding on this specific point in *Mills* should no longer be followed in this district. . . ." *Barbaran*, 2007 WL 973945, at *4.

·6·

rules of construction in 11 U.S.C. § 102 do not solve the conundrum of exactly when the 180-day

period ends. The statutory text is silent and congressional intent is unclear. The authorities on

both sides of the issue raise various arguments for their differing conclusions.

For example, the *Warren* court interpreted the phrase "date of filing" in § 109(h)(1) to

mean the "specific day, month, year, *and time of day* the petition was filed," noting that in

bankruptcy cases, "the exact time of filing is a critical bright line in determining property rights

of debtors and creditors. At the *moment* a petition for relief is filed, the automatic stay goes into

effect, affording the debtor an extra measure of protection from the legal maneuvers of his

creditors." *Warren*, 339 B.R. at 480 (emphasis added); *see also Spears*, 355 B.R. at 118-19;

*Hudson*, 352 B.R. at 396. The *Warren* court turned to the legislative history of BAPCPA to

support its interpretation, noting that the "House Report . . . summarizes this section to mean that

an individual debtor must 'receive credit counseling within the 180-day period preceding the

filing of the bankruptcy case'" and that "[n]othing in the legislative history suggests that Congress

contemplated at least a one-day waiting period after completion of credit counseling. . . ."

*Warren*, 339 B.R. at 480 (*quoting* H.R. REP. NO. 109-31, pt.1, at 54 (2005), *as reprinted in* 2005

U.S.C.C.A.N. 88, 124-25).

Although the *Hudson* court did not find the legislative history to be conclusive, it did

agree that the result in *Warren* was persuasive. The court noted that although the word "date"

commonly and usually means "day, month, and year," it cited BLACK'S LAW DICTIONARY (5th ed.

1979) to show that "date" may also include the concept of time, a concept that may mean a

specific "moment in time." *Hudson*, 352 B.R. at 393-95. The *Hudson* court, after suggesting an

alternative definition for the word "date," turned to the Bankruptcy Code to examine how the

-7-

word "date" has been used in other provisions of the Code. The court first examined 11 U.S.C.

§ 348(f)(1)(A), noting that:

> When this section says "as of the date of filing of the petition," it means as of the moment of the filing of the petition. It identifies a moment in time. It does not say "any time within twenty-four hours" of the filing of the petition some of the property is property of the estate and some may not be. Such a result would provide uncertainty. A bright line is required to define what is and what is not property of the estate, and that bright line is a moment in time, namely, the filing of the petition.

*Id.* at 393. The court also looked at 11 U.S.C. §§ 547 and 549. Section 547 authorizes the trustee

to recover transfers made "on or within 90 days before the date of the filing of the petition," and

§ 549 authorizes the trustee to avoid a transfer "that occurs after the commencement of the case."

*Id.* In the *Hudson* court's view:

> The failure to observe a bright line rule to identify avoidable transfers under Section 547 would permit a gap to arise between midnight and the actual time the petition was filed. Thus, preferential transfers made during the morning preceding an afternoon petition filing would escape the trustee's grasp. Absent compelling reasons to the contrary, it should be presumed that Congress intended the term "date" to have the same meaning in one section of the Bankruptcy Code as another. In the context of the Bankruptcy Code, the term "date" appears to identify a moment in time, rather than a span of time.

*Id.* at 393-94.

In the second line of cases, the courts have also found considerable support for their

interpretation of § 109(h). For example, the court in *Cole* relied upon several dictionaries to

conclude that the word "date" means "the *day* when an event happened or will happen," or "refers

simply to day, month, and year." *Cole*, 347 B.R. at 74 (emphasis added) (*quoting* BLACK'S LAW

DICTIONARY, 395 (6th ed. 1994); BLACK'S LAW DICTIONARY, 399 (7th ed. 1999); WEBSTER'S NEW

·8·

COLLEGIATE DICTIONARY, 286 (1979)). Using the assistance of the noted dictionaries, the *Cole*

court could come to "no other conclusion that the plain, ordinary meaning is that a debtor must,

in order to comply with § 109(h)(1), complete the required counseling briefing on any day within

180 days prior to but not including the date upon which his or her bankruptcy petition is filed."

*Id.* The court also found support in other provisions of the Bankruptcy Code:

> This analysis comports with the notion that "[t]he only method to
> establish that date would be to count *back* from the filing of the
> petition . . . [and] the requirement that the insufficiency that
> existed '90 days before the date of the filing of the petition,' be
> calculated, indicates that the code is not concerned with a
> particular time of day, but rather the entire day." *Belford v. Union
> Trust Co. (In re Wild Bills, Inc.),* 206 B.R. 8, 16 (Bankr. D. Conn.
> 1997) (quoting 11 U.S.C. § 553(b)(1) and calculating the relevant
> dates concerning a setoff); *see also Lester v. S. Mills, Inc. (In re
> Terry Mfg. Co., Inc.),* 325 B.R. 638, 642 (Bankr. M.D. Ala. 2005)
> (holding that the 90-day preference period under 11 U.S.C. §
> 547(b)(4)(A) "is determined by counting backward from the date
> of the petition, excluding the date of the petition and including the
> date of the transfer.").

347 B.R. at 74-75.

The *Cole* court also noted that "common law legal systems have long reckoned periods

of legal significance by the calendar, not by the clock." *Id.* at 75 (citation omitted). Moreover,

the Supreme Court, when analyzing tax assessment statutes, has held:

> '[w]hen the period allowed for doing an act is to be reckoned from
> the making of a contract, or the happening of any other event, the
> day on which the event happened may be regarded as an entirety,
> or a point of time; and so may be excluded from the computation.'
> The fiction that a day has no parts is a figurative recognition of the
> fact that people do not trouble themselves without reason about a
> nicer division of time.

*Id.* (quoting *Burnet v. Willingham Loan & Trust Co.,* 282 U.S. 437, 439 (1931)).

-9-

The *Cole* court also found support in Rule 9006 of the Federal Rules of Bankruptcy Procedure. Although the court did not make a determination that the Rule applied to § 109(h), it did use it to explain that "many courts have applied the principle of calculating the time period 'by excluding the day of the event from which the period begins to run and including the final day of the period.'" *Id.* at 76 (*quoting MBNA Am. v. Locke (In re Greene)*, 223 F.3d 1064, 1069 (9th Cir. 2000)).

Finally, the *Cole* court turned to the legislative history to support its conclusion, stating that "'[t]he legislation's credit counseling provisions are intended to give consumers in financial distress an opportunity to learn about the consequences of bankruptcy–such as the potentially devastating effect it can have on their credit rating–before they decide to file for bankruptcy relief.'" *Id.* at 76-77 (*quoting* H.R. REP. NO. 109-31, pt. 1, at 18 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 104). The "purpose would be thwarted by allowing a debtor to obtain a pre-petition counseling briefing on the same day that a bankruptcy petition is filed." *Id.* at 77.

The *Mills* and *Murphy* courts similarly held that a debtor who obtained credit counseling on the same date that she filed her petition was ineligible for such relief. *Mills*, 341 B.R. at 109; *Murphy*, 342 B.R. at 673. Although the *Mills* court concluded that the legislative history does not support the position one way or the other in regard to the language of timing, the court found that it "is settled that when a statute requires an act to be done within a specified number of days prior to a fixed date, the last day, namely, the fixed date, is to be excluded . . . in making the calculation." *Mills*, 341 B.R. at 107,109 (citation omitted); *see also Murphy,* 342 B.R. at 673 (same).

·10·

The Court agrees with the conclusion reached in *Cole*, *Mills*, and *Murphy*. However, the

Court arrives at this decision for a different reason. Congress did not provide, in the language of

§ 109(h), the precise meaning of the phrase "during the 180-day period preceding the date of

filing of the petition." Therefore, the Court must turn to the Bankruptcy Rules for guidance in

implementing the statutory text. Furthermore, the Rules fill in some of the gaps and unanswered

questions left by the various lacunae in the Code. The Bankruptcy Rules were promulgated by

the Supreme Court of the United States under 28 U.S.C. § 2075[2] and were prescribed to govern

the practice and procedure in cases under title 11. These Rules are not to be ignored. The

bankruptcy court is bound to follow, without exceptions, the Bankruptcy Rules unless a Rule is

inconsistent with § 2075, in which case the Bankruptcy Code controls. *United N.M. Bank v.*

*Wilferth (In re Wilferth)*, 57 B.R. 693, 694 (Bankr. D.N.M. 1986). The Court finds that no

conflict exists between § 109(h) and Bankruptcy Rule 9006(a).

Bankruptcy Rule 9006(a) establishes the method of computing "any period of time

prescribed or allowed . . . by any applicable statute." 10 ALAN N. RESNICK & HENRY J. SOMMER,

COLLIER ON BANKRUPTCY ¶ 9006.04, at 9006-10 (15th ed. rev. 2006). Specifically, Bankruptcy

Rule 9006(a) provides in relevant part:

> In computing any period of time prescribed or allowed by these
> rules, or by the Federal Rules of Civil Procedure made applicable
> by these rules, by the local rules, by order of court, or by any
> applicable statute, *the day of the act*, event, or default *from which
> the designated period of time begins to run shall not be included....*

---

[2]  Section 2075 provides in relevant part that "[t]he Supreme Court shall have the
power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and
the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or
modify any substantive right." 28 U.S.C. § 2075.

·11·

FED. R. BANKR. P. 9006(a) (emphasis added). Taking the language of § 109(h), in conjunction with the above-quoted provision of Bankruptcy Rule 9006(a), the Court concludes that in order to comply with § 109(h)(1), a debtor must complete the required counseling briefing on any day within 180 days prior to, but not including, the date upon which the petition is filed. As Congress has not more specifically legislated the time in question, by default the Court looks to the Rule for the applicable answer.

Recently, the court in *Moore* held that Bankruptcy Rule 9006(a) does not apply to § 109(h). 2006 WL 3692640, at *8-9. The court concluded that applying Bankruptcy Rule 9006(a) would "eliminat[e] the day the credit counseling briefing is obtained as a day on which one can file for bankruptcy relief" and would, thus, "impermissibly abridge an individual's substantive right to file bankruptcy, in derogation of 28 U.S.C. § 2075." *Id.* at *9.

The Court respectfully disagrees and rejects the rationale in *Moore* that the application of Bankruptcy Rule 9006(a) to § 109(h) abridges a substantive right. Congress chose the wording in § 109(h)(1) that "an individual may not be a debtor under this title unless such individual has, *during the 180-day period preceding the date of filing* of the petition by such individual, received from an approved nonprofit budget and credit counseling agency. . . ." 11 U.S.C. § 109(h)(1) (emphasis added). Congress easily could have added the additional phrase "at any time, including the date of filing" to qualify the last pertinent part of § 109(h)(1), and avoid recourse to the Rule, but did not. Some courts have opined that Congress intended § 109(h) to do nothing more than educate debtors about debt management by requiring them to receive debt counseling *before* bankruptcy. *See Warren,* 339 B.R. at 480 (finding that Congress intended that a debtor simply obtain credit counseling *before* filing the petition). Other courts have suggested that Congress

-12·

intended to discourage the practice of hastily filing bankruptcy petitions by forcing debtors to "obtain their required counseling at a point in time far enough in advance of filing that they would at least be educated as to the consequences of bankruptcy." *Cole*, 347 B.R. at 77. Congress' true intent is uncertain given the lack of precision in the statutory text.

There is little doubt, however, that Congress intended in BAPCPA to make it more difficult to seek and obtain bankruptcy relief. *In re Thompson*, 344 B.R. 899, 902 (Bankr. S.D. Ind. 2006). Section 109(h) "requires debtors to receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its alternatives, and consequences." H.R. REP. NO. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89. The Court concludes that Congress, when drafting § 109(h), intended to create a short waiting period between receiving credit counseling and filing the petition. Therefore, because Congress intended for debtors to wait a short period between receiving credit counseling and filing the bankruptcy petition, applying Bankruptcy Rule 9006(a) to compute the time period prescribed by § 109(h) does not impermissibly abridge an individual's substantive right. Bankruptcy relief is a privilege, not a constitutional right. *United States v. Kras*, 409 U.S. 434, 446-47 (1973).

It is true, as *Hudson* points out, that in some dictionaries an alternative definition for the word "date," along with the definition proposed by *Cole*, may be found. 352 B.R. at 394. It is clear, as discussed above, that the word "date" is susceptible to more than one definition. However, because Congress did not provide a more precise meaning of the phrase "during the 180-day period preceding the date of filing of the petition" the Court is required to follow the

·13·

Bankruptcy Rules to determine the method of computing the period of time prescribed by §
109(h).

The Debtor argues in her response to the motion to dismiss, that following the logic of
*Cole, Mills,* and *Murphy* "a debtor who obtains [her] credit counseling at 11:59 p.m. would not
be prevented from filing a case two minutes later. However, a debtor who received [the]
certificate of credit counseling at 12:01 a.m. could not file for twenty-four hours." (Resp. at 4.)
The Debtor suggests that the holdings in these cases should not be followed because they create
more confusion and lead to a harsh result. The Court disagrees. The confusion results from the
imprecise statutory language legislated which the courts are trying to follow and implement. The
application of many of the Code's provisions produces harsh results for various parties in interest,
but follows from applying the statute as drafted and legislated. When the imprecise statutory text
of § 109(h) is implemented through the mandate of Bankruptcy Rule 9006(a), the end result is the
Court's effort to comply with the statute as legislated by Congress. Absent a clear congressional
intent stating otherwise, the Court is unwilling to ignore the language used in § 109(h), as applied
by Bankruptcy Rule 9006(a), in order to abrogate the period between obtaining the certificate of
credit counseling and filing a bankruptcy petition. The judiciary is not licensed "to soften the
import of Congress' chosen words even if we believe the words lead to a harsh outcome. . . ."
*Lamie v. United States Trustee,* 540 U.S. 526, 538 (2004) (*quoting United States v. Locke,* 471
U.S. 84, 95 (1985)).

Based upon the foregoing, the Court concludes that the "180-day period preceding the date
of filing of the petition" in § 109(h)(1) does not include the date upon which a debtor's
bankruptcy petition is filed. Therefore, a debtor who obtains the required pre-petition counseling

-14-

briefing on the same day as the date upon which a petition is filed does not comply with §
109(h)(1) and is not eligible to be a debtor under title 11. The Debtor, having filed her petition
on November 8, 2006, the same day that she received her credit counseling briefing, did not
comply with the statute, and accordingly, she is not eligible under § 109(h)(1) to be a debtor under
any chapter of title 11.

### 2. Dismiss the Case or Strike the Petition?

GMAC has moved to dismiss the Debtor's case. Neither § 109(h) nor its legislative
history mentions what should happen to the bankruptcy case of a petitioner who is ineligible to
be a debtor. *In re Seaman*, 340 B.R. 698, 700-01 (Bankr. E.D.N.Y. 2006). The options are to
dismiss the case or strike or declare void ab initio the petition. *Id.* Not surprisingly, a split of
authority exists regarding the appropriate remedy when a debtor is ineligible under § 109(h).

The determination of whether to strike the petition or dismiss the case is important
because it may affect the applicability of the automatic stay provision of §§ 362(c)(3) and/or
362(c)(4). Specifically, one court has noted the significance of a dismissal:

> The consequences of dismissal include the possibility that the
> automatic stay will be available only on a limited basis in the event
> that the petitioner files a subsequent bankruptcy case. That is, if
> the case is dismissed and the petitioner files another bankruptcy
> case within one year of the dismissal, then the automatic stay will
> be in place for only thirty days unless, upon motion by a party in
> interest and after notice and a hearing, the court extends the stay.

*Seaman*, 340 B.R. at 701 (*citing* 11 U.S.C. § 362(c)(3)(A) and /(B)). If the petition is stricken or
declared void ab initio, a question arises as to whether the automatic stay arose upon the filing of
the petition. *In re Rios*, 336 B.R. 177, 180 & n.2 (Bankr. S.D.N.Y. 2005).

-15-

While § 109(h) is silent as to the appropriate remedy in such circumstances, guidance is available from several cases that have specifically addressed the issue of whether striking the petition or dismissing the case is the appropriate outcome.[3]  Several cases have ruled that a bankruptcy petition filed by an individual who is ineligible under § 109(h) should be stricken. *See id.; In re Salazar*, 339 B.R. 622, 632-34 (Bankr. S.D. Tex. 2006); *In re Hubbard*, 333 B.R. 377, 388 (Bankr. S.D. Tex. 2005).  These decisions concluded that a petition filed by an individual who is ineligible under § 109(h) does not commence a case.  Because these cases concluded that the petition did not commence a case under § 301, there is no case to dismiss and, thus, the petition should be stricken.  *See Rios*, 336 B.R. at 179-80; *Hubbard*, 333 B.R. at 388. After the *Rios* court decided that a case was not commenced under § 301, it concluded that striking the petition was the most appropriate result, stating that "Congress did not intend the credit-counseling requirement to limit the availability or extent of bankruptcy relief for debtors, which dismissal would accomplish, and thus, dismissal is inappropriate." 336 B.R. at 180.  It is clear that these courts are also persuaded by the potential harsh results of dismissing the case: the future limitation of debtor protection.  *Id.*

The court in *Salazar* upheld its previous ruling striking the petition in order to prevent the automatic stay from going into effect for an individual who is ineligible under § 109(h), noting that it "*is implausible to believe that Congress specifically identified people to exclude from the*

---

[3]  While only a handful of cases address the issue of whether striking the petition or dismissing the case is most appropriate, the *Seaman* court noted that out of the thirty-four decisions addressing ineligibility under § 109(h) at the time of the opinion, thirty-one resulted in a dismissal.  *Seaman*, 340 B.R. at 706 n.3 (collecting cases).

-16-

*bankruptcy process, yet permitted those same people to benefit from bankruptcy's most powerful protection: the automatic stay."* 339 B.R. at 629-30.

Another court viewed the requirements of § 109(h) as jurisdictional and dismissed the ineligible petitioner's case, but also noted that "[b]ecause the petition failed to provide [the debtor] status as a debtor, the Court will not consider this a dismissed case in which the individual was the debtor, for purposes of denying the imposition of the automatic stay in a subsequently filed case pursuant to 11 U.S.C. § 362." *In re Valdez,* 335 B.R. 801, 803 (Bankr. S.D. Fla. 2005). Following this line of cases, a petition filed by an ineligible debtor is void ab initio.

The majority of courts, however, has disagreed with the above line of cases and ruled that a case has been commenced, and the appropriate action is to dismiss the case. *See In re Jones,* 352 B.R. 813, 826 (Bankr. S.D. Tex. 2006); *Seaman,* 340 B.R. at 707; *In re Tomco,* 339 B.R. 145, 158 (Bankr. W.D. Pa. 2006); *In re Ross,* 338 B.R. 134, 136 (Bankr. N.D. Ga. 2006); *In re Westover,* No. 06-10183, 2006 WL 1982751, at *2 (Bankr. D. Vt. July 11, 2006); *In re Taylor,* No. 05-35381DM, 2006 WL 4043357, at *2 (Bankr. N.D. Cal. Mar. 9, 2006). The Court also agrees that a case has been commenced and dismissing the case, rather than striking the petition, is the appropriate and traditional remedy upon a finding that an individual is ineligible to be a debtor under § 109. Support for the Court's conclusion may be found in analogous Code provisions, both pre-BAPCPA and post-BAPCPA, and the cases that examine them. The most pertinent are the provisions of 11 U.S.C. §§ 707 and 1307 which provide numerous non-exclusive grounds for dismissal of a consumer debtor's cases; striking the ineligible debtor's case is not among the enumerated statutory provisions. *See* 11 U.S.C. §§ 707 and 1307.

-17-

Prior to the BAPCPA amendments, an individual could be found to be ineligible for numerous reasons other than failure to comply with the counseling requirements. For example, § 109(e) sets forth who may be a debtor under Chapter 13 and provides that a debtor must have "regular income" and unsecured and secured debts that do not exceed the prescribed limits. "Courts have, with apparent unanimity, concluded that when a Chapter 13 petitioner is ineligible under Section 109(e), the case should be either voluntary converted or dismissed." *Seaman,* 340 B.R. at 701 (*citing In re Mazzeo,* 131 F.3d 295 (2d Cir. 1997) (affirming dismissal of case where debtor's unsecured debt exceeded the § 109(e) limit); *Dillon v. Tex. Comm'n on Envt'l Quality,* 138 Fed. Appx. 609, 612 (5th Cir. 2005) (finding that dismissal of case was proper where debtor was ineligible); *Ross,* 338 B.R. at 136-37 & n.2 ("Almost all courts now recognize that the filing of a chapter 13 petition by a debtor ineligible to do so under § 109(e) nevertheless commences a case that invokes the jurisdiction of the bankruptcy court."); *In re Rifkin,* 124 B.R. 626, 629 (Bankr. E.D.N.Y. 1991) ("Whether the debtor is eligible to proceed under Chapter 13 is in essence a motion to dismiss.")).

Likewise, courts have dismissed cases filed by petitioners who are ineligible for bankruptcy relief because of their corporate or entity status. *Seaman,* 340 B.R. at 702 (*citing In re C-TC 9th Ave. P'ship,* 113 F.3d 1304 (2d. Cir. 1997) (dismissing bankruptcy case of partnership in dissolution that was ineligible to be a Chapter 11 debtor under § 109(d)); *In re Westville Distrib. & Transp.,* 293 B.R. 101 (Bankr. D. Conn. 2003) (dismissing bankruptcy case under § 109(a), (b), and (d) where entity on whose behalf a petition was filed had no legal corporate existence)).

·18·

Courts have also dismissed cases filed by petitioners who are ineligible under § 109(g). *Seaman*, 340 B.R. at 702 (*citing In re Flores*, 291 B.R. 44 (Bankr. S.D.N.Y. 2003) (determining that § 109(g) is not jurisdictional and that a petition filed by an individual who by its terms is ineligible nevertheless commences a case that is not void ab initio)). There is, however, a split of authority on this issue. Some courts hold that a case filed by a petitioner ineligible to be a debtor under § 109(g) is void ab initio. *See In re Walker*, 171 B.R. 197, 202 (Bankr. E.D. Pa. 1994). "Courts in these cases are clearly concerned about abuse of the bankruptcy process through serial filings that repeatedly invoke the automatic stay, thus improperly frustrating the rights of secured creditors to foreclose on their collateral: they view the void *ab initio* consequence as an appropriate response to the problem." *Ross*, 338 B.R. at 137. The problem with serial filings, however, may be remedied through annulment of the stay under 11 U.S.C. § 362(d), dismissals with prejudice under 11 U.S.C. § 349, or in rem stay relief that precludes the triggering of the automatic stay in a later case. *Id.* at 138.

The BAPCPA amendments to § 362 also support the Court's conclusion. Section 362(b)(21)(A) provides an exception to the automatic stay with regard to the foreclosure of real property "if the debtor is ineligible under section 109(g). . . ." 11 U.S.C. § 362(b)(21)(A). "If such a filing were void *ab initio* and did not result in an automatic stay under existing law, such an amendment would not have been necessary." *Ross*, 338 B.R. at 139. "Congress is presumed to know the state of existing law when it enacts new legislation. The enactment of additional exceptions to the automatic stay thus evidences the understanding of Congress that a filing in violation of § 109(g) commences a case. . . ." *Id.* The addition of § 362(b)(21)(A) confirms that Congress did not view § 109(g) as being a jurisdictional provision.

-19-

There is no indication that Congress intended to treat § 109(h) incligibility any different than any other form of ineligibility in § 109; it therefore follows that a filing by a debtor ineligible under § 109(h) commences a case and is not a nullity or void ab initio. This conclusion comports with due process rights that are given to all parties in a bankruptcy case and avoids any uncertainty that may exist with respect to the petitioner's status and the triggering of the automatic stay. *Flores*, 291 B.R. at 54-55.

Moreover, striking a petition as void ab initio does not necessarily prevent the harsh results that the courts in *Rios, Salazar, Valdez,* and *Hubbard* tried to avoid. These courts tried to avoid denying debtors "the full panoply of protections provided by . . . § 362 if they choose, after rectifying their error in failing to seek credit counseling, to file for bankruptcy protection in the future." *Rios*, 336 B.R. at 180. Striking the petition, however, may have the exact opposite effect. *Ross*, 338 B.R. at 139. If the petition is struck as void ab initio, then it is true that the petition is not counted as a prior pending case for purposes of § 362(c)'s limitations on stays in successive cases. "But such 'protection' will be a pyrrhic victory if, in the meantime, a creditor has completed a repossession or foreclosure because of the absence of a stay in the void case." *Id.* Furthermore, the dismissal of a case filed by an ineligible petitioner, will not necessarily leave good-faith petitioners without protection. "Such debtors may still access the 'full panoply of protections' by seeking an extension of the automatic stay from the court within the first thirty days after the second case is filed." *Seaman*, 340 B.R. at 709 (*citing Rios*, 336 B.R. at 180). *See* 11 U.S.C. § 362(c)(3)(B).

-20-

The Court's conclusion makes practical sense as well. Dismissing the case avoids the

procedural and substantive pitfalls that may occur if the petition is stricken. *Seaman*, 340 B.R.

at 709. These include:

> [1] questions as to the existence and willfulness of an automatic
> stay violation . . . [2] validity of an action against property taken
> by a creditor of a petitioner who appears ineligible to be a debtor
> but later is determined to be eligible . . . [3] the prospect of
> unnecessary inaction by a cautious creditor where a petitioner
> proves to be ineligible to be a debtor . . . [and] [4] whether filing
> fees should be returned to ineligible petitioners and whether
> Chapter 7 trustees may be compensated for work on cases that
> prove to be a nullity or void *ab initio*.

*Id.* at 707.

The Court does not accept the notion that the petitioner's eligibility as a debtor under §

109(h) impacts the determination of whether a case has been commenced or whether the Court's

subject matter jurisdiction is invoked. *See Tomco*, 339 B.R. at 159; *Seaman,* 340 B.R. at 707.

"[T]he operative event which triggers the commencement of a bankruptcy case . . . is the filing

of a petition." *Tomco*, 339 B.R. at 159. Until the Court determines that a petitioner is ineligible

as a debtor, a case is commenced by the filing of the petition, an estate is created under 11 U.S.C.

§ 541, and the automatic stay of § 362(a) commences. Thus, the petition cannot be void ab initio.

For all of these reasons, the Court reaches the same conclusion with regard to the effect

of § 109(h) ineligibility as the court in *Tomco* reached. Namely, a petition filed with the

bankruptcy court commences a case, and it continues to be a case until the Court determines that

the debtor did not have the right to be a debtor. If the Court determines that the individual is

ineligible to be a debtor, the Court can dismiss the case and fashion such other relief as may be

·21·

necessary to protect the rights of creditors.  The Debtor was not eligible under § 109(h)(1) to be

a debtor under any chapter of title 11 and, therefore, the Court dismisses her case under § 707(a).

**B.      The Debtor's Motion for Sanctions**

In the Debtor's motion for sanctions pursuant to 11 U.S.C. §§ 362(a)(3) and 362(k)(1),

she claims that GMAC and the Development Group violated the automatic stay when they

repossessed the vehicle and refused to return it upon request.

Section 362 governs the automatic stay.  Section 362(a) states that "a petition filed under

section 301 . . . of this title . . . operates as a stay, applicable to all entities. . . ."  11 U.S.C. §

362(a).  In a voluntary Chapter 7, like the case at hand, the stay takes effect when a petition is

filed under § 301.  Section 301(a) states that "[a] voluntary case under a chapter of this title is

commenced by the filing with the bankruptcy court of a petition under such chapter by an entity

that may be a debtor under such chapter."  11 U.S.C. § 301(a).

As discussed above, despite her ineligibility as a debtor under § 109(h), this case was

commenced upon the filing of the petition.  The bankruptcy estate was created under 11 U.S.C.

§ 541 and the automatic stay applied under § 362(a).  Therefore, the estate property and the

Debtor's property were protected by § 362's automatic stay provision at the time the vehicle was

repossessed.

Under § 362(a)(3), a creditor is prohibited from taking "any act to obtain possession of

property of the estate or of property from the estate or to exercise control over property of the

estate[.]"  11 U.S.C. § 362(a)(3).  Section 362(k)(1) provides that "[a]n individual injured by any

willful violation of a stay provided by this section shall recover actual damages, including costs

-22-

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.

§ 362(k)(1).

In order to recover damages under § 362(k)(1), the Debtor has the burden of establishing

the following elements by a preponderance of the evidence: (1) a bankruptcy petition was filed;

(2) the debtor is an "individual" under the automatic stay provision; (3) the creditor had notice

of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor

suffered damages. *In re Pincombe*, 256 B.R. 774, 782 (Bankr. N.D. Ill. 2000) (analyzing §

362(h), the pre-BAPCPA analog to the current § 362(k)(1)); *see also In re Sumpter*, 171 B.R. 835,

843-45 (Bankr. N.D. Ill. 1994) (same). The first three elements are not in dispute, but the last two

are disputed.

A willful violation under § 362(k)(1) requires knowledge on the part of the violating party

that a formal bankruptcy petition has been filed. *In re Fridge*, 239 B.R. 182, 190 (Bankr. N.D.

Ill. 1999) (analyzing § 362(h), the pre-BAPCPA analog to the current § 362(k)(1)). Notice can

be either through formal notice or otherwise. *Id.* (*citing Price v. Rochford*, 947 F.2d 829 (7th Cir.

1991)). If a creditor violates the automatic stay provision without knowledge that an active

bankruptcy case is pending, the violation is technical. *Will v. Ford Motor Credit Co. (In re Will)*,

303 B.R. 357, 364 (Bankr. N.D. Ill. 2003).

"What begins as a technical violation of the automatic stay, though, [may turn] into a

willful one because a creditor has an affirmative duty to remedy [a] . . . violation without court

order when it learns of the existence of a . . . bankruptcy case and receives a request to return

estate property repossessed post-petition." *Id.* "[T]he affirmative duty to fix the violation without

·23·

unreasonable delay would certainly exist when the repossession occurs *post-petition* and the bankruptcy-filing information is later relayed to the secured creditor." *Id.* at 365.

The Court finds that GMAC learned of the bankruptcy filing on the date it had the Development Group repossess the vehicle–November 15, 2006. Thus, the repossession constituted a technical violation of the automatic stay. Nevertheless, the Court finds that their actions were not willful. Written notice was not supplied to GMAC by the Debtor or Haskell immediately subsequent to the filing of the petition despite GMAC's requests to receive a case number if the Debtor chose to file a bankruptcy petition. GMAC's proffered evidence shows that GMAC and the Development Group did not have actual notice of the bankruptcy case when the vehicle was repossessed. Both GMAC and the Development Group claim that notice of the filing was not on the steering wheel, on the dashboard, or anywhere else in the vehicle. The Debtor's contrary allegation that she left two copies of the notice of filing on the dashboard and steering wheel is disputed by GMAC.

The Court also finds that the technical violation of the automatic stay did not turn into a willful violation because GMAC fulfilled its affirmative duty to remedy the violation by attempting to return the vehicle to the Debtor. Once GMAC was informed of the bankruptcy filing, its proffers shows that on numerous occasions it attempted to return the vehicle. One day after the vehicle was repossessed, on November 16, 2006, the Debtor's attorney filed the motion for sanctions. Thereafter, on November 20, 2006, GMAC filed a motion to annul the automatic stay to allow the Court to determine whether retroactive stay relief was appropriate.

Finally, the Debtor failed to proffer any evidence regarding damages. There is no evidence to support the Debtor's claim of unspecified actual damages or any egregious conduct

-24-

to support punitive damages, and nothing to serve as a predicate for awarding attorneys' fees and costs. Damages cannot be awarded in a vacuum. The parties waived their opportunity for an evidentiary hearing. Hence, the Debtor has not established this final element. For all of these reasons, the Court denies the Debtor's motion for sanctions.

**C.   GMAC's Motion to Annul the Automatic Stay**

GMAC also seeks to annul the automatic stay pursuant to 11 U.S.C. § 362(d). GMAC requests an annulment so that its repossession of the Debtor's vehicle might be retroactively validated.

Section 362(d) provides in pertinent part that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a)..., such as by terminating, *annulling*, modifying, or conditioning such stay...." 11 U.S.C. § 362(d). "[A]n order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay, and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay." *In re Behr*, 78 B.R. 447, 449 (Bankr. D.S.C. 1987). "Courts are in agreement that allowing retroactive relief from the stay is the exception rather than the rule." *Will*, 303 B.R. at 368 (citation omitted). However, the courts are also in agreement that the determination of whether relief from the stay should be granted retroactively is within the "wide latitude" of the court in that such decision should be made on a case-by-case basis. *In re Syed*, 238 B.R. 133, 144 (Bankr. N.D. Ill. 1999). The Court may weigh equitable considerations in deciding whether annulment is appropriate, including whether the creditor who violated the stay did so willfully, and whether the movant would be unfairly prejudiced by the enforcement of the stay. *Will*, 303 B.R. at 368.

-25-

The Court finds that annulment of the stay is not appropriate or necessary in this matter. The Debtor is ineligible under § 109(h) to be a debtor and her case will be dismissed, thereby effectively terminating the automatic stay as a matter of law under § 362(c)(2)(B). Moreover, GMAC is in possession of the collateral, and the Debtor's statement of intention indicated that she intended to surrender the vehicle to GMAC. The Court has determined that GMAC and the Development Group did not commit a willful violation of the stay, and, thus, sanctions will not be awarded against GMAC. Therefore, the Court does not find that the movant, GMAC, is unfairly prejudiced absent a stay annulment. Accordingly, the Court denies the motion for annulment of the stay.


## IV. CONCLUSION

For the foregoing reasons, the Court grants GMAC's motions to dismiss the Debtor's case. The Court denies GMAC's motion to annul the automatic stay and denies the Debtor's motion for sanctions.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**


DATE: _4/24/7_

_____
John H. Squires
**United States Bankruptcy Judge**

cc: See attached Service List

## SERVICE LIST

### Ashley Michelle Gossett
### Bankruptcy No. 06 B 14628

John A. Lipinsky, Esq.
Coman & Anderson, P.C.
2525 Cabot Drive, Suite 300
Lisle, IL 60532

James M. Philbrick, Esq.
Law Offices of James M. Philbrick P.C.
P.O. Box 351
Mundelein, IL 60060

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

Christopher H. Purcell, Esq.
Sherman & Sherman
120 S. LaSalle Street, Suite 1460
Chicago, IL 60603